# Loucheim & Co. v. First Nat. Bank of Talladega,

*Bill in Equity by Creditor to Set Aside Deed of Trust on Ground of Fraud.*

1. *General averments of fraud; the mere conclusion of the pleader.*—The general averments in a bill charging defendants with the purpose of hindering, delaying and defrauding the complainants, aside from the *facts* alleged, and the circumstances surrounding the transaction, are the mere conclusions of the pleader, and are of no consequence in passing upon demurrers to the bill.

2. *Usury; when it does not vitiate a mortgage.*—Usury in a debt does not vitiate the mortgage or deed of trust securing it where the usurious charge was a stipulation incident to, and a part of the contract by which the debt was created, and not added to the debt at the time of

| 98 | 521 |
| 100 | 301 |
| 98 | 521 |
| 108 | 222 |
| 110 | 114 |
| 98 | 521 |
| 114 | 642 |
| 98 | 521 |
| 116 | 228 |
| 98 | 521 |
| 127 | 401 |
| 98 | 521 |
| 129 | 576 |
| 98 | 521 |
| e141 | 624 |

the transaction to make it approximate the value of the property conveyed.

3. *Mortgage by insolvent debtor to secure a creditor.*—A mortgage or deed of trust executed by an insolvent debtor to a preferred creditor, of a stock of goods, with power in the trustee to sell the same at wholesale or retail, and after the payment of the expenses of the trust and the satisfaction of the creditor's debt, pay the balance over to the debtor freed from the trust, is not a fraud upon other creditors.

4 *Mortgage, with choses-in-action as additional security.*—It does not vitiate the transaction that a debtor, after giving a mortgage to a preferred creditor, should, in addition deposit choses-in-action with the mortgagee as further security, which are not named in the mortgage or deed of trust.

5. *Same; stipulation as to surplus proceeds.*—Nor does a stipulation in a deed of trust that any proceeds in the hands of the trustee after sale of the mortgaged property shall be paid to the mortgagor, invalidate the instrument.

APPEAL from Talladega Chancery Court.
Tried before the Hon. S. K. MCSPADDEN.

The bill in this case was filed by Loucheim & Co., a partnership, against F. B. Fulmer, J. E. Denny, and the First National Bank of Talladega, and sought to set aside, as fraudulent and void against the complainants, a deed of trust executed by said F. B. Fulmer to the said First National Bank of Talladega, conveying a stock of goods in store at Syllacauga, with a provision that said Denny should take charge of the same as trustee, and sell and pay the debts due to said bank by said Fulmer. The facts alleged in the bill, upon which the charge of fraud is founded, are substantially, that one Fulmer became indebted to the First National Bank of Talladega for money loaned him by said bank. Said indebtedness became due, and the said Fulmer was unable to pay it. The amount due said bank was $2,000, and included $60 of usurious interest. Said bank thereupon procured said Fulmer to execute a mortgage upon his stock of goods, which invoiced $1,038, and to place with said bank as collateral $1,100 of open accounts belonging to said Fulmer. The bank also took a new note from said Fulmer, and extended the said indebtedness sixty days. The new note and mortgage was for $2,063—$2,000 being the original debt, and $50 dollars being attorney's fees paid by said bank for drawing up said mortgage, and $13 being interest upon the debt during the time for which extension was given. Said Fulmer was, at the time of the execution of said mortgage, insolvent and such insolvency was known to the bank.

The First National Bank of Talladega demurred to the bill, assigning as grounds of demurrer (1), that there were no sufficient charges of fraud in said bill; (2), that it was no

[Loucheim & Co. v. First Nat. Bank of Talladega.]

fraud on the rights of Fulmer's creditors to include in said mortgage the reasonable expenses of selling the mortgaged property by the trustee; (3), that it was not a fraud on the rights of Fulmer's other creditors that the bank required him to pay reasonable attorney's fees for drawing said mortgage; (4), that the giving of further time of payment to Fulmer does not constitute fraud; (5), that the provision in said mortgage for the payment of any balance over on a sale of the goods to Fulmer is not a badge of fraud; (6) and that the charge of $80 usury in said debt is not a fraud, nor can complainants avail themselves of such usury in this bill.

The court sustained the demurrer, and the complainants take this appeal, assigning as error the ruling of the court on the demurrer.

BISHOP & WHITSON, and E. H. DRYER, for appellant, insisted—1. That the creditor who purchases property from his insolvent debtor and takes from him security for his debt, having knowledge of his insolvency and of his intent to hinder, delay or defraud his other creditors, must do nothing for the benefit, or to favor the debtor, and can go no further than secure the payment of his own debt; citing *Levy v. Williams*, 79 Ala. 171; *Price v. Mazange*, 31 Ala. 701; *McDowell v. Steel*, 87 Ala. 493.

2.   The payment of fifty dollars, at the request of Fulmer, was a benefit to said Fulmer, and being made a part of the mortgage debt, the consideration of said mortgage became partly for a present cash payment, and in part an antecedent debt, and in such case, the securing of a just debt is only a circumstance to be considered in pronouncing upon the good faith of the transaction.—*Levy v. Williams, supra; Carter v. Coleman*, 82 Ala. 177.

3.   The provision in the mortgage for turning over any surplus to the mortgagor, Fulmer, was an arrangement for shifting so much property of the debtor and placing it beyond the reach of creditors, and is thus at least a contingent benefit to the debtor.—*Tompkins v. Levy*, 87 Ala. 263.

BROWNE & BREWER, for appellee.—1. The facts of Fulmer's indebtedness to the bank, his inability to pay, and his securing an extension by giving the mortgage and collaterals, when the bank knew he was insolvent, do not constitute fraud.—*Perry Ins. & Trust Co. v. Foster*, 58 Ala. 512; *Globe, &c., v. Thatcher*, 87 Ala. 458.

2.   The $80 of usurious interest in the original debt does not constitute fraud, or vitiate the mortgage.   It is only

when the usury is added for the purpose of swelling the debt to an amount sufficient to cover the property conveyed, that it renders the conveyance fraudulent.—*Harris v. Russell*, 93 Ala. 59.

3. The taking by the bank of the collateral security in addition to the mortgage, was not fraudulent.—*Murray's Case*, 86 Ala. 234; *Stern v. Fisher*, 32 Barb. 198.

4. The provision in the mortgage for paying over any surplus to the mortgagor, after the payment of the mortgage debt, is but stipulating to do what the law requires shall be done by the mortgagee, and a necessary incident to all mortgages.—85 Ala. 234; 58 Ala. 502; 1 Ala. 258; 5 Ala. 297; 32 Ala. 161; 17 Ala. 659; 11 Ala. 689.

5. The provision for the payment of the expenses incident to the trust does not vitiate or render fraudulent the mortgage.—*Burrill on Assignments*, § 417; 58 Ala. 514; *Cunningham v. Freebord*, 11 Wend. 240. The attorney's fee for drawing the mortgage was a part of such expense.

6. The bank had the right to embrace in the mortgage property fully sufficient to cover its debt under all contingencies.—Bump on Fraud. Con. 46; Burrill on Assignments, § 99.

McCLELLAN, J.—The general averments of the bill that the deed of trust executed by Fulmer to secure certain recited indebtedness to the Bank of Talladega was the consummation of a plan conceived by all the defendants for the purpose of hindering, delaying and defrauding the complainants and other creditors of Fulmer, are of no consequence in passing upon the demurrers to the bill, aside from the *facts* alleged therein as constituting the fraud complained of, and relied on as a predicate for the relief prayed. Or, in other words, the inquiry of fraud *vel non* on the averments of the bill is to be determined by a consideration of what was done by the parties as therein alleged, and the circumstances surrounding the transaction; the allegation that the transaction was entered into and consummated to hinder, delay and defraud creditors, is a mere conclusion of the pleader. The facts alleged will be indicated in the following discussion of them.

2. Usury in the debt secured does not vitiate the mortgage or deed of trust, where, as in this case, the usurious charge was a stipulated incident to, and a part of the contract by which the debt was created, and not added to the debt at the time of the transaction, intended to secure it for the purpose of swelling its amount so as that it would equal or

approximate the value of the property conveyed.—*Harris v. Russell*, 93 Ala. 59.

3. It seems that Fulmer, the failing debtor, became and was at the time the mortgage was executed indebted to certain attorneys in the sum of fifty dollars for services in connection with that transaction. This sum was paid by the bank *to the attorneys*, and included in the amount secured by the mortgage. There was no fraud in this. Nothing was paid to the debtor. This payment to the attorneys did not place in his hands money which he could withhold from his creditors. It was not *pro tanto* a cash consideration for the conveyance in trust, but at most was the assumption and payment by the bank of a debt due from, Fulmer to a third person, as a part of the consideration for the mortgage. That this involves no vitiating consequences 'has more than once been declared by this court.—*Mobile Savings Bank v. McDonnell*, 89 Ala. 434, and cases there cited.

4. We do not understand the deed of trust to authorize the trustee, Denny, to sell in any manner—at wholesale or retail—any more of the property covered by the instrument than would suffice to pay the costs, incident to the execution of the trust, and the secured debt. Hence we do not concur in the insistance of complainants' counsel that the mortgage or deed of trust authorized a sale of the property in bulk by the trustee, and that, of consequence, the trust might have been executed by an immediate sale of the whole property for a sum in excess of the secured debt and charges, and the payment of this sum to the debtor, thereby putting it in his power to defeat other creditors. To the contrary, we construe the deed to have this effect: that any surplus of the *property* remaining after the trustee had realized a sufficient sum from sales to discharge the trust and thus exhausted his authority, reverted to Fulmer, and in his hands, discharged of the trust, could be subjected to his other debts with as much facility as if this transaction had never occurred. Moreover, in determining the amount to be realized out of the property, regard was necessarily to be had to the amount of the secured debt at the time of realization from the sale or sales of the goods. If the bank had collected any of the *choses in action* delivered to it by Fulmer as collateral security, the money derived from this source would go in diminution of the sum to be collected through sales of the property. So that the apprehension suggested in briefs of counsel, "that the bank might have collected a good portion of its debt out of such collateral before it was due, or to the extent of such collateral, then its agent and trustee, in the

[Newsom v. Pitman.]

exercise of the power to sell at wholesale, could have converted the entire stock at once into cash, thus shifting any surplus beyond the reach of his creditors," is, to our minds, unwarranted.

5.   With respect to the effect to be accorded the fact that Fulmer gave the bank certain *choses in action* as additional security for its debt, and these collaterals are not mentioned in the deed of trust, the law is settled in this court against the vitiating consequences for which counsel contend.—*Perry Ins. & Trust Co. v. Foster*, 58 Ala. 502.

6.   Nor does the stipulation that upon a sale by the mortgagee after the law-day of the whole property, any surplus of the proceeds should be paid to the mortgagor, invalidate the instrument.   This stipulation is but the expression of the legal effect of the conveyance, and does not avoid it.— *Perry Ins. Co. v. Foster, supra,* and cases there cited.

7.   The proposition that the provisions of the deed of trust for the payment of the reasonable expenses of its execution out of the property covered by it vitiates the instrument, is not insisted on in argument, though advanced by the bill as stamping fraud upon the transaction.   The proposition is manifestly unsound.

What we have said, it is believed, disposes of all the matters relied on in the bill of complaint to taint the deed of trust and mortgage—for in some aspects the instrument is both—with fraud.   The facts alleged do not make out a case of fraud.   The case is a stronger one for the appellees than that of *Murray, Dibbrell & Co. v. McNealy et al.,* 86 Ala. 234, if it differs at all from that case in principle.   The decree of the chancellor is supported by that case and authorities there cited, by the case of *Globe Iron Roofing & Corrugating Co. v. Thacher,* 87 Ala. 458, and many others, and is affirmed.

Affirmed.